UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

| | | |
|---|---|---|
| THELMA J. HARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:08-cv-384 |
| | ) | |
| v. | ) | Honorable Janet T. Neff |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |

This is a social security action brought under 42 U.S.C. § 405(g), seeking review of a final decision of the Commissioner of Social Security finding that plaintiff was not entitled to disability insurance benefits (DIB). On January 26, 2004, plaintiff filed her application for DIB benefits, claiming an March 9, 2003 onset of disability. Plaintiff's claim was denied on initial review. (A.R. 35-36, 42-46). On May 1, 2006, plaintiff received a hearing before an administrative law judge (ALJ) at which she was represented by counsel. (A.R. 585-617). On January 23, 2007, the ALJ issued her decision finding that plaintiff was not disabled. (A.R. 16-25). On February 21, 2008, the Appeals Council denied review (A.R. 5-7), and the ALJ's decision became the Commissioner's final decision.

On April 25, 2008, plaintiff filed her complaint seeking judicial review of the Commissioner's decision denying her claim for DIB benefits. The issues raised by plaintiff are as follows:

1. Did the ALJ meet her burden of proof based on the substantial evidence of the whole record, after finding the claimant was not able to perform her past work, when the burden of proof shifted to the SSA?

2. Did the ALJ err in failing to ask hypothetical questions based on the impairments and fail[ing] to properly determine the residual functional capacity?

3. Did the ALJ err in failing to give any weight to [the opinion of] Dr. R[ie]ssinger[,] a treating chronic pain psychologist?

4. Did the Appeals Council err in failing to send records and transcripts after a request from the claimant to assist in the appeal.

(Statement of Errors, Plf. Brief at iv, docket # 8). Upon review, I find that plaintiff's arguments do not provide a basis for disturbing the Commissioner's decision. I recommend that the Commissioner's decision be affirmed.

## **Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see*

*McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ -- would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004).

**Discussion**

The ALJ found that plaintiff met the disability insured requirement of the Social Security Act from her alleged onset of disability of March 9, 2003, through the date of the ALJ's decision. (A.R. 18). Plaintiff had not engaged in substantial gainful activity since her alleged onset of disability. (A.R. 18). The ALJ found that plaintiff had the following severe impairments: "obesity, degenerative disc disease of the cervical spine, depression, post-bunion surgery, and painful left shoulder." (A.R. 18). Plaintiff did not have an impairment or combination of impairments

which met or equaled the requirements of the listing of impairments. (A.R. 20). The ALJ found that plaintiff retained the following residual functional capacity (RFC):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift or carry a maximum of 20 pounds occasionally and 10 pounds frequently. In an eight-hour workday, the claimant can walk or stand six hours and sit for six hours. She needs the option to sit or stand at will. The claimant can climb no ladders, ropes or scaffolds. She can only occasionally climb ramps or stairs, balance, kneel, crouch, crawl, bend, twist, or stoop. The claimant can only occasionally push or pull with her left upper extremity. She can only occasionally handle or finger with her left hand. The claimant should have no exposure to dangerous unprotected machinery or work at unprotected heights. She should never use vibrating tools. The claimant can only do simple unskilled wok with a specific vocational preparation (SVP) rating of 1 or 2; work that does not involve maintaining intense concentration; work that requires only minimal contact/interaction with co-workers or does not require working in close proximity to co-workers; and work that requires only brief and superficial contact with the public with small groups of less than ten.

(A.R. 20).

The ALJ determined that plaintiff's subjective complaints were not fully credible:

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible.
>
> The claimant testified that she is unable to squat, but Dr. Kountanis noted that the claimant was able to do a full squat without assistance (Exhibit 27F) [A.R. 537]. The claimant testified that she goes to the emergency room once per month due to pain, but there are no medical records to substantiate this. The claimant testified that she is unable to use her right hand at times, but Dr. Kountanis reported that the claimant's right hand strength and grasp were good. The claimant testified that she has left hand numbness, but Dr. Kountanis stated that the claimant was able to use her left hand and manipulate small objects (Exhibit 27F) [A.R. 538]. The claimant testified that she does not do the laundry or wash dishes, but reported earlier that she washed dishes and folded the laundry (Exhibit 5E) [A.R. 113]. In June 2006, the claimant reported that she did light household chores (Exhibit 27F) [A.R. 536].
>
> In June 2003. Dr. Flood reported that the claimant was not giving a firm effort at all times during her motor exam (Exhibit 6F) [A.R.203]. Dr. Kuhnert opined that the degree of pain that the claimant said she was experiencing during the physical examination maneuvers

> appeared to be somewhat disproportionate to the stimulus he was providing. In July 2003, an examining neurologist stated that there was inconsistency with the claimant's range of motion of the cervical spine between the beginning and the end of the examination (Exhibit 8F) [A.R. 239]. In May 2006, Dr. Geiger averred that the claimant was somewhat dramatic in response to his questions (Exhibit 26F) [A.R. 529]. In June 2006, Dr. Kountanis averred that the claimant's pain behavior was excessive (Exhibit 27F) [A.R. 538].
>
> * * *
>
> The medical records establish that the claimant is obese and suffers from degenerative disc disease of the cervical spine, depression, and has a painful left shoulder. She has also undergone bunion surgery. However, in June 2003, Dr. Flood averred that the claimant had cervical herniated nucleus pulposis without radiculopathy and only mild degenerative disc disease. Dr. Flood stated that there was absolutely no indication for surgical intervention (Exhibit 6F) [A.R. 202-03]. In July 2003, an MRI of the cervical spine demonstrated only minor disc bulging at C5-C6 and C6-C7 levels without central canal stenosis. An electromyogram (EMG) revealed no evidence of left or right cervical radiculopathy, or left or right carpal tunnel syndrome (Exhibit 8F) [A.R. 238-45]. In December 2003, the claimant reported a noticeable improvement with Lexapro. Dr. VanTol stated that the claimant was emotionally ready to return to work, but needed to continue physical therapy to address her shoulder injury (Exhibit 18F) [A.R. 368]. In June 2006, the claimant reported that she was independent with her activities of daily living and drove a car, using both hands, to the exam. Dr. Kountanis noted the claimant was able to use her left hand to manipulate small objects such as [] safety pin[s], dimes and paper clips. Dr. Kountanis stated that the claimant could step climb, heel and toe walk, and fully squat without assistance (Exhibit 27F) [A.R. 535-38]. Dr. Geiger assessed the claimant with a GAF score of 55, which is indicative of only moderate psychological symptoms and is not work preclusive. The claimant does not have any psychotic symptoms and does not need a structured living environment.

(A.R. 22-23). Plaintiff was unable to perform her past relevant work. (A.R. 23). Plaintiff was 38-years-old as of her alleged onset of disability. Thus, at all times relevant to her claim, she was classified as younger individual. (A.R. 23). ALJ found that plaintiff has at least a high school education and is able to communicate in English. (A.R. 24). The ALJ found that the transferability of job skills was not material. (A.R. 24). The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age, and with her RFC, education, and work experience, the VE testified that there were approximately 36,950 jobs

in the State of Michigan that the hypothetical person would be capable of performing. (A.R. 612-14). The ALJ held that this constituted a significant number of jobs. Using Rules 201.28 and 202.21 of the Medical-Vocational Guidelines as a framework, the ALJ found that plaintiff was not disabled. (A.R. 16-25).

**1.**

Plaintiff argues that the ALJ failed to adequately explain her credibility determination. (Plf. Brief at 24-25) (citing *Rogers v. Commissioner*, 486 F.3d 234, (6th Cir. 2007)). Upon review, I find that the ALJ's credibility determination is supported by more than substantial evidence and that the ALJ's explanation regarding this factual finding easily satisfies the *Rogers* standard.

The court does not make its own credibility determinations. *See Walters v. Commissioner*, 127 F.3d at 528; *see McGlothlin v. Commissioner*, 299 F. App'x 516, 523-24 (6th Cir. 2008). The court cannot substitute its own credibility determination for the ALJ's. The court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed . . . ." *Kuhn v. Commissioner*, 124 F. App'x 943, 945 (6th Cir. 2005). The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the deferential "substantial evidence" standard. "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Commissioner*, 152 F. App'x 485, 488 (6th Cir. 2005). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones*, 336 F.3d at 476. "The ALJ's findings as to a claimant's credibility are entitled to deference,

because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints." *Buxton v. Halter*, 246 F.3d at 773. "Since the ALJ has the opportunity to observe the demeanor of the witness, h[er] conclusions with respect to credibility should not be discarded lightly and should be accorded deference." *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993); *see White v. Commissioner*, 572 F.3d 272, 287 (6th Cir. 2009).

In *Rogers v. Commissioner*, the United States Court of Appeals for the Sixth Circuit reiterated that, "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." 486 F.3d at 247. However, the ALJ's credibility determination must find support in the administrative record and must be sufficiently specific to permit meaningful appellate review:

> [T]he ALJ is not free to make credibility determinations based solely upon an "intangible or intuitive notion about an individual's credibility." Soc. Sec. Rul. 96-7p, 1996 WL 374186, at * 4. Rather, such determinations must find support in the record. Whenever a claimant's complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the claimant in connection with his or her complaints "based on a consideration of the entire case record." The entire case record includes any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record. Consistency of the various pieces of information contained in the record should be scrutinized. Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect.
>
> Social Security Ruling 96-7p also requires the ALJ explain his credibility determinations in his decision such that it "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." In other words, blanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence.

*Rogers v. Commissioner*, 486 F.3d at 247-48 (footnote omitted). The Court of Appeals explained, "The requirement that the Commissioner fully explain his determinations of the claimant's credibility is grounded, at least in part, upon the need for clarity in later proceedings." *Rogers v. Commissioner*, 486 F.3d at 248 n.5. "In the absence of an explicit and reasoned rejection of an entire line of evidence, the remaining evidence is 'substantial' only when considered in isolation. It is more than merely 'helpful' for the ALJ to articulate reasons ... for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review." *Rogers v. Commissioner*, 486 F.3d at 248 n.5 (quoting *Hurst v. Secretary of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir.1985)). The ALJ's credibility determination, previously quoted at length herein, is supported by more than substantial evidence in the administrative record. She provided a very detailed explanation why she found that plaintiff's subjective complaints regarding the intensity, persistence, and limiting effects of her symptoms were not entirely credible. (A.R. 23). It was entirely appropriate for the ALJ to take plaintiff's daily activities into account in making her credibility determination. *See Cruse v. Commissioner*, 502 F.3d 532, 542 (6th Cir. 2007); *Blacha v. Secretary of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). I find no error.

### 2.

Plaintiff argues that the vocational expert's testimony in response to the ALJ's hypothetical question was inadequate to provide substantial evidence supporting the Commissioner's decision because it did not adequately take into account plaintiff's subjective pain complaints and a global assessment of functioning (GAF) score assigned by Dr. Geiger:

> The ALJ's hypothetical did not consider any of the chronic pain factors and the depressive issues noted by two separate unrelated psychologists who saw the claimant from 2003

> through 2005. It also does not take into consideration the severe findings by Dr. Geiger who
> also diagnosed major depression and a GAF of only 51. Consequently, while it is true that
> a mere GAF figure of 50 alone is not enough to prove disability, the facts have to be looked
> at and when examined in this case it is clear that this claimant's RFC would not support a
> finding of employability.

(Plf. Brief at 26).

First, plaintiff's argument with regard to her subjective complaints is a mere repackaging of her challenge to the ALJ's credibility determination, and it is rejected for the reasons previously stated herein. It is well settled that a hypothetical question to a VE need not include unsubstantiated complaints. *See Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *see also Anthony v. Astrue*, 266 F. App'x 451, 461 (6th Cir. 2008). The ALJ found that plaintiff's subjective complaints were not fully credible. The ALJ was not bound in any way by a VE's response to a hypothetical question incorporating a contrary assumption.

Second, the ALJ's hypothetical adequately reflected plaintiff's emotional impairments. Psychologist Steve Geiger performed a consultative psychological examination on May 24, 2006 (A.R. 527-34). Plaintiff advised him that she first became depressed in 2003 after a slip and fall accident. (A.R. 257). Plaintiff had never been hospitalized in a psychiatric unit. (A.R. 528). She denied experiencing hallucinations or delusions. (A.R. 529). She arrived for her appointment on time and her grooming and hygiene were "good." (A.R. 529). Her stream of mental activity was "logical, organized and somewhat dramatic in response to [Psychologist Geiger's] questions." (A.R. 529). Plaintiff was oriented to person, time, and place. (A.R. 530). Psychologist Geiger did not perform any tests, but based on plaintiff's responses, he offered a diagnosis of major depression, recurrent, moderate and a specific phobia of fear of crowds. (A.R. 530). He assigned

a current GAF score of 55. (A.R. 531). Plaintiff's argument that she received a GAF score of "51" from Psychologist Geiger is simply wrong. (A.R. 531).

The ALJ is not required to give any weight to a GAF score. *Kornecky v. Commissioner*, 167 F. App'x 496, 511 (6th Cir. 2006). "GAF examinations measure psychological, social, and occupational functioning on a continuum of mental-health status from 0 to 100, with lower scores indicating more severe mental limitations." *White v. Commissioner*, 572 F.3d 272, 276 (6th Cir. 2009). A GAF score is a subjective rather than an objective assessment:

> [GAF score is] a subjective determination that represents the clinician's judgment of the individual's overall level of functioning. It ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). A GAF score of 31-40 indicates some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas such as work or school, family relations, judgment, thinking or mood. A GAF of 41 to 50 means that the patient has serious symptoms ... or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). A GAF rating of 51 to 60 signals the existence of moderate difficulty in social or occupational functioning.

*White v. Commissioner*, 572 F.3d at 276.. "GAF is a clinician's subjective rating of an individual's overall psychological functioning. A GAF score may help an ALJ assess mental RFC, but it is not raw medical data. Rather, it allows a mental health professional to turn medical signs and symptoms into a general assessment, understandable by a lay person, of an individual's mental functioning." *Kennedy v. Astrue*, 247 F. App'x 761, 766 (6th Cir. 2007); *see Kornecky*, 167 F. App'x at 503 n. 7. The DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS' (DSM-IV's) explanation of GAF scale indicates that "a score may have little or no bearing on the subject's social and occupational functioning." *Kornecky*, 167 F. App'x at 511.

Even assuming *arguendo* that Psychologist Geiger's GAF score of 55 was entitled to some weight, the ALJ's RFC determination was consistent with "moderate" symptoms. RFC is a factual determination made by the ALJ based upon all the evidence within the record. *Walters*, 127 F.3d at 531. A GAF score in the range of 51-60 "indicates moderate symptoms (e.g., flat effect and circumstantial speech, occasional panic attacks), or moderate difficulty in social, occupational or school functioning (e.g., few friends, conflicts with peers or co-workers)." *Bowen v. Commissioner*, 478 F.3d 742, 745 (6th Cir. 2007). Moderate symptoms are more than adequately taken into account in ALJ's RFC finding which limited plaintiff to simple, unskilled work involving minimal contact with others and "brief and superficial contact with the general public with small groups of less than ten." (A.R. 20). I find no error.

**3.**

Plaintiff argues that the ALJ erred when she failed to give adequate weight to the opinion of Psychologist Camala Riessinger, Ph.D. The argument is set forth in its entirety below:

> The treating doctor should be accorded substantial weight given her treating relationship. In this case the ALJ noted that because the claimant goes to church, counseling, reads the Bible, and prepares some meals, this shows the claimant is capable of full time employment. Consequently, minimal weight was given to Dr. R[ie]ssinger.

(Plf. Brief at 27). Upon review, I find that plaintiff's argument does not provide a basis for disturbing the Commissioner's decision.

Plaintiff did not identify what opinion expressed by Psychologist Riessinger failed to receive appropriate weight. Plaintiff claimed a March 9, 2003 onset of disability. The only treatment records from Psychologist Riessinger are dated mid-2005: (1) an April 20, 2005 intake evaluation after which Psychologist Riessinger recommended a trial of antidepressant medication

and physical therapy (A.R. 413-14); (2) notes from a June 30, 2005 individual psychotherapy session (A.R. 411); and (3) notes from group psychotherapy sessions conducted on June 28 and July 5, 7, 12, 14, and 20, 2005. (A.R. 406-410, 412). Approximately a year later, on April 26, 2006, Psychologist Riessinger completed mental residual functional capacity assessment and a psychiatric review technique forms. (A.R. 509-26). She opined that plaintiff met the requirements of listings 12.04 and 12.06 (A.R. 513) and that plaintiff was "markedly limited" in every area of mental functioning, the only exceptions being a "moderate" limitation in plaintiff's ability to maintain socially appropriate behavior and no significant limitation in plaintiff's ability to be aware of normal hazards and take appropriate precautions. (A.R. 509-10). The ALJ found that Psychologist Riessinger's April 2006 statements were not entitled to weight because they were inconsistent with the psychologist's own reports and were inconsistent with the record as a whole. (A.R. 22).

The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner and a treating physician's opinion that a patient is disabled is not "giv[en] any special significance." 20 C.F.R. § 404.1527(e); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004); *see also Deaton v. Commissioner*, 315 F. App'x 595, 598 (6th Cir. 2009). Likewise, "no special significance" is attached to treating physician opinions regarding the credibility of the plaintiff's subjective complaints, RFC, or whether the plaintiff's impairments meet or equal the requirement of a listed impairment because they are administrative issues reserved to the Commissioner. 20 C.F.R. § 404.1527(e); *see Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009); *Deaton*, 315 F. App'x at 598; *Warner*, 375 F.3d at 390. Thus, Psychologist Riessinger's opinion that plaintiff met the requirements of listed impairments was not entitled to any special significance under the social security regulations.

It is the ALJ's job to resolve conflicting medical evidence. *See Richardson v. Perales*, 402 U.S. 389, 399 (1971); *Mitchell v. Commissioner*, No. 08-6244, 2009 WL 1531879, at * 3 (6th Cir. June 2, 2009); *Martin v. Commissioner*, 170 F. App'x 369, 373 (6th Cir. 2006). Judicial review of the Commissioner's final administrative decision does not encompass resolving such conflicts. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) *Walters v. Commissioner*, 127 F.3d at 528; *see Price v. Commissioner*, No. 08-4210, 2009 WL 2514079, at * 2 (6th Cir. Aug. 19, 2009). The treatment relationship is one of the factors that the ALJ considers in determining what weight to give a medical opinion. Generally, more weight is given to the medical opinions of treating sources. 20 C.F.R. § 404.1527(d)(2). If the ALJ finds that the treating source's opinion on the issues of the nature and severity of the claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case, the social security regulations specify that the ALJ is to give the medical opinion controlling weight. *Id.*; *see McGrew v. Commissioner*, No. 08-4561, 2009 WL 2514081, at * 3 (6th Cir. Aug. 19, 2009); *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009); *White v. Commissioner*, 572 F.3d 272, 285-86 (6th Cir. 2009). A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see Cox v. Commissioner*, 295 F. App'x 27, 35 (6th Cir. 2008) ("This court generally defers to an ALJ's decision to give more weight to the opinion of one physician than another, where, as here, the ALJ's opinion is supported by evidence that the rejected opinion is inconsistent with the other medical evidence in the record."). The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective

criteria and documentation." *Buxton*, 246 F.3d at 773; *see Kidd v. Commissioner*, 283 F. App'x 336, 340 (6th Cir. 2008). An opinion that is based on the claimant's reporting of her symptoms is not entitled to any particular weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Mitchell v. Commissioner*, 2009 WL 1531879, at * 5-6; *Smith v. Commissioner*, 482 F.3d 873, 876-77 (6th Cir. 2007).

Even when a treating source's medical opinion is not given controlling weight because it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the record, the opinion should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. § 404.1527(d); *Martin v. Commissioner*, 170 F. App'x 369, 372 (6th Cir. 2006); *see also Anthony v. Astrue*, 266 F. App'x 451, 458-59 (6th Cir. 2008).

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner*, 482 F.3d at 875-76; *see Allen v. Commissioner*, 561 F.3d 646, 651 (6th Cir. 2009); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). "The procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deem them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876. I find no violation of the treating physician rule and that the ALJ complied with the procedural requirement of providing "good reasons" for rejecting the extreme limitations proffered by Psychologist

Riessinger's April 26, 2006 mental residual functional capacity assessment and a psychiatric review technique forms. (A.R. 509-26).

**4.**

Plaintiff argues that the Appeals Council erred in failing to send records and transcripts after a request from the claimant to assist in the appeal:

> It is clear that an appeal could not properly be perfected without reviewing all the medical records and the transcripts. This was requested in correspondence dated January 27, 2007, to the Appeals Council. No response was ever made. The Appeals Council just summarily affirmed the decision of the ALJ. The claimant was denied her substantive due process rights in order to perfect this appeal.

(Plf. Brief at 27). Plaintiff's brief cites no legal authority and contains no developed argument corresponding to this purported error. Issues raised in a perfunctory manner are deemed waived. *See Geboy v. Brigano*, 489 F.3d 752, 767 (6th Cir. 2007); *see also Allen v. Highland Hosp. Corp.*, 545 F.3d 387, 406 (6th Cir. 2008); *Anthony v. Astrue*, 266 F. App'x 451, 458 (6th Cir. 2008).

Assuming *arguendo* that the issue has not been waived, it is patently meritless. The scope of the court's review is defined by statute, and does not encompass the Appeals Council's discretionary decision whether to grant review. *See Matthews v. Apfel*, 239 F.3d 589, 594 (3d Cir. 2001) ("No statutory authority (the source of the district court's review) authorizes the court to review the Appeals Council decision to deny review."). For more than fifteen years it has been the clearly established law of the Sixth Circuit that the ALJ's decision is the final decision subject to review by this court in cases where the Appeals Council denies review. *See Jones v. Commissioner*, 336 F.3d at 478; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001); *Cotton v. Sullivan*, 2 F.3d 692,

696 (6th Cir. 1993); *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993).

Further, any error that may have occurred was attributable to plaintiff's attorney's deficient request. On January 27, 2007, plaintiff's attorney wrote a two-paragraph transmittal letter which accompanied plaintiff's request for discretionary review by the Appeals Council:

> Enclosed please find the Request for Review of the Hearing Decision/Order in regard to the above-referenced claimant.
>
> Please send a copy of the tapes and exhibits so examples of the ALJ's errors may be noted for the record. If you have any questions, please call.

(A.R. 12). The attorney's letter did not address the question of payment for the requested materials and he made no reference to 20 C.F.R. § 404.974, the regulation specifying the procedure for obtaining evidence from the Appeals Council:

> You may request and receive copies or a statement of the documents or other written evidence upon which the hearing decision or dismissal was based and a copy or summary of the transcript of oral evidence. However, you will be asked to pay the costs of providing these copies unless there is a good reason why you should not pay.

20 C.F.R. § 404.974. Any failure to comply with the request made in the second paragraph of the letter was harmless because the administrative record that was before the ALJ is now before this court for review. Finally, the Appeals Council cannot be faulted for proceeding to its February 21, 2008 decision denying plaintiff's request for discretionary review. (A.R. 5-7). The Social Security regulations, 20 C.F.R. §§ 404.968(a), 404.975, and even the form plaintiff used for requesting review by the Appeals Council (A.R. 10), expressly advised her attorney that if he needed additional time within which to submit evidence or argument to the Appeals Council, it was up to counsel to submit

a written request accompanied by his explanation why the requested extension was necessary. The administrative record does not include any such request.

### **Recommended Disposition**

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.


Dated: September 2, 2009        /s/ Joseph G. Scoville
                                United States Magistrate Judge


### **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *McClanahan v. Commissioner*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).